POSTED ON WEBSITE

**FILED**
MAR 1 0 2009
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Robert Leo Shepard and<br>Shery Lynn Shepard,<br><br>    Debtors. | Case No. 08-13398-B-7 |
| Glenn Conklin,<br><br>    Plaintiff,<br><br>v.<br><br>Robert Leo Shepard,<br><br>    Defendant. | Adversary Proc. No. 08-1210<br><br>DC No. DRJ-1 |

**MEMORANDUM DECISION REGARDING MOTION
FOR SUMMARY JUDGMENT**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

David R. Jenkins, Esq., appeared on behalf of the plaintiff, Glenn Conklin.

Defendant, Robert Leo Shepard appeared *in propria persona*.

    Before the court is an adversary proceeding to determine the dischargeability of a judgment (the "State Court Judgment"), which has been entered against the defendant, Robert Leo Shepard ("Shepard") in the Madera County Superior Court (the "State

Court"). The plaintiff, Glenn Conklin ("Conklin"), asks this court to give collateral estoppel effect to the findings of fact and conclusions of law that have already been decided in the State Court and based thereon, has moved for summary judgment in this adversary proceeding (the "Motion"). Because the State Court has already made all of the findings of fact and conclusions of law necessary to support both of Conklin's nondischargeability claims, the Motion will be granted

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and 11 U.S.C. §523.[1] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**Background.**

Prior to the bankruptcy, Shepard and Conklin were engaged in a lengthy litigation in the State Court (the "Civil Action"). After a bifurcated trial, the State Court issued written findings of fact and conclusions of law (the "Findings and Conclusions"). The background of this case can be summarized from those Findings and Conclusions, and from facts stated in declarations Shepard filed in opposition to the Motion, as follows:

1. During and prior to 2004, Shepard and Conklin were partners in a business known as New Stone Age.

2. New Stone Age was a partnership under California law (the "Partnership").

3. In late 2004, Shepard and Conklin negotiated to dissolve the Partnership, but no agreement was ever reached.

4. In April 2005, Shepard formed a new corporation named New Stone Age Granite & Marble, Inc. (the "Corporation").

///

///

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated on or *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

5.  In forming the Corporation, Shepard intended to deprive Conklin of his interest in the Partnership without compensating Conklin for that interest.

6.  In April 2005, Shepard began transferring money, $50,000, from the Partnership account to the Corporation's operating account without Conklin's knowledge or consent. Shepard had knowledge (scienter) that his conduct was wrongful and for that reason concealed his actions from Conklin.

7.  When Conklin discovered what Shepard was doing, he calculated the value of the Partnership and withdrew one-half of that value, $109,200, from the Partnership's bank account.

8.  Thereafter, Shepard changed the locks on the Partnership business premises, excluded Conklin from the Partnership and converted partnership assets to his own use in the Corporation.

9.  Shepard did not compensate Conklin for his interest in the assets Shepard removed from the Partnership.

10. After April 2005, Shepard operated the Corporation at the former Partnership premises, utilizing the Partnership's inventory, tools, vehicles, accounts, and work in progress to the exclusion of Conklin.

11. After April 2005, Shepard exercised exclusive dominion and control over the Partnership's assets.

12. In May 2005, Shepard commenced the Civil Action against Conklin in the State Court for conversion, breach of contract, dissolution of partnership, breach of fiduciary relationship, fraud, unjust enrichment, accounting and constructive trust.

13. Conklin filed a cross-complaint in the Civil Action against Shepard alleging breach of contract and breach of fiduciary duty.

14. Shepard was represented by counsel during the Civil Action which was bifurcated into two parts and spread over multiple hearings. The first phase was for an accounting of Partnership assets.

15. After the accounting phase of the trial, Shepard stipulated to dismiss the remaining claims in his complaint against Conklin.

16. The second phase of the Civil Action was to determine the parties' rights and liability to each other under Conklin's cross-complaint.

17. After the accounting phase of the trial, Shepard could no longer afford an attorney and did not appear or participate in the liability phase of the Civil Action.

18. At the conclusion of the Civil Action, after a trial, the State Court found that Shepard had a fiduciary duty to his co-partner, Conklin, under California Corporations Code § 16404.

19. Shepard violated that duty to Conklin by, *inter alia*, taking Partnership money and converting Partnership assets for his own use in the Corporation and failing to account for said property.

20. Shepard's actions in violation of his fiduciary duty to Conklin were found to be knowing, willful and malicious.

21. The State Court awarded Conklin compensatory damages totaling $388,519.51 and punitive damages in the amount of $100,000.

**Issues Presented.**

Conklin already has the State Court Judgment against Shepard for compensatory and punitive damages. That Judgment has been entered in the State Court and it was not appealed. Conklin is not asking this bankruptcy court to enter a new judgment for damages against Shepard. Conklin is only asking this court to rule that Shepard's bankruptcy does not discharge the existing State Court Judgment. Whatever rights Shepard may have to seek modification of, or relief from, the State Court Judgment under California law will be preserved and will not be affected by this court's determination regarding the dischargeability of that Judgment.

Shepard contends that he was not able to "substantially participate" in the second phase of the Civil Action and that he is entitled to have the liability issues retried in this court. In other words, Shepard contends that the State Court Judgment was entered against him by default and that the Findings and Conclusions were not "actually litigated." The only issue for this court to decide is whether the facts and legal conclusions relevant to the discharge issue have already been necessarily and actually litigated in the State Court such that they cannot be relitigated here.

**A. Applicable Law.**

   **1. Summary Judgment Standard.**

Conklin asks this court to rule in his favor by summary judgment, *i.e.*, without a full trial on the issues which will determine the dischargeability of his State Court Judgment. Summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount

of damages." Fed. R. Civ. P. 56(c), (made applicable in this adversary proceeding by Fed. R. Bankr. P. 7056).

A material fact is one that might affect the outcome of the suit under the governing law and irrelevant or unnecessary factual disputes will not be considered in a motion for summary judgment. *Anderson, et al. v. Liberty Lobby, Inc., et al.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

The moving party bears the burden of showing that there is no genuine dispute as to each issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). However, the party adverse to a motion for summary judgment cannot simply deny the pleadings of the movant; the adverse party must designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). More precisely, "[i]t is not enough that the nonmoving party point to disputed facts; rather, they must make a sufficient showing to establish the existence of a triable issue of material fact as to an element essential to the moving party's case." *In re Powerburst Corporation*, 154 B.R. 307, 309-310 (Bankr.E.D.Cal. 1993), citing *Lake Nacimiento Ranch v. San Luis Obispo County*, 830 F.2d 977, 979-980 (9th Cir.1987), cert. denied 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988).

The parties may use summary judgment to dispose of all or any part thereof the opponents claim or cross claim. Fed.R.Civ.P. 56(a) & (b). The court may sua sponte grant summary judgment in favor of a nonmoving party as long as the moving party was provided a "full and fair opportunity to ventilate the issues in the motion." *United States v. Real Property Located at 25445 via Dona Christa, Valencia California*, 138 F.3d 403, 407, n.4 (9th Cir. 1998), citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982). The filing of a formal cross-motion is not necessary. *Local 453, International Union of Electrical, Radio & Machine Workers, AFL-CIO v. Otis Elevator Company*, 314 F.2d 25, 27 (2d Cir. 1963).

**2. Application of Collateral Estoppel to the Disputed Issues.**

Conklin contends that summary judgment is appropriate here because all of the

material facts and conclusions of law relevant to this adversary proceeding, *i.e.*, relevant to the bankruptcy discharge issues, have been necessarily and actually litigated in the State Court. In support of that, Conklin has lodged with this court a certified copy of the State Court's Findings and Conclusions. Conklin asks this court to apply the doctrine of collateral estoppel to each fact and conclusion of law set forth in the Findings and Conclusions. If collateral estoppel applies, then it is not necessary for Conklin to relitigate those facts and legal issues in the bankruptcy court.

Resolution of this dispute begins with an analysis of the Findings and Conclusions. This court must decide, based on the record in the State Court, whether the State Court has already conclusively decided each material fact and legal issue required to prove Conklin's claims in this adversary proceeding. Under the federal Full Faith and Credit statute, federal courts must give state court judgments the same preclusive effect that those judgments would receive from another court of the same state. 28 U.S.C. § 1738. The bankruptcy court has original jurisdiction to hear the dischargeability complaint, but it is not a court of appeal for issues that have already been decided in the State Court.

Collateral estoppel, or issue preclusion, prevents parties from relitigating an issue of fact or law if the same issue has already been determined in prior litigation. *See R.T.C. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999). "Mutual" collateral estoppel involves subsequent litigation between the same parties or their privies. It has the "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). Collateral estoppel applies in bankruptcy dischargeability proceedings. *See Grogan v. Garner*, 498 U.S. 279, 284 & n.11 (1991).

California law determines the preclusive effect which this court must give to the Findings and Conclusions. California courts will apply collateral estoppel only if certain threshold requirements have been met, and then only if application of issue preclusion

furthers the public policies underlying the doctrine. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001), citing *Lucido v. Superior. Ct.*, 51 Cal.3d 335, 341, 272 Cal. Rptr. 767 (1990). The public policies underlying collateral estoppel are (1) the preservation of the integrity of the judicial system, (2) promotion of judicial economy, and (3) the protection of litigants from harassment by vexatious litigation. *Lucido*, 51 Cal.3d at 343.

There are five threshold requirements which must be established before collateral estoppel of any issue will apply:

> First, the issue sought to be precluded from relitigation must be *identical* to that decided in a former proceeding.
>
> Second, this issue must have been *actually litigated* in the former proceeding.
>
> Third, it must have been *necessarily decided* in the former proceeding.
>
> Fourth, the decision in the former proceeding must be *final and on the merits*.
>
> Finally, the party against whom preclusion is sought must be the *same [party]* as, or in privity with, the party to the former proceeding. (Emphasis added.)

*Id.* at 341.

Here, there is no dispute concerning the fourth (finality) and fifth (privity) requirements for collateral estoppel. Shepard and Conklin were the same adverse parties in the prior Civil Action and the State Court Judgment is final on the merits because Shepard failed to appeal it. This bankruptcy court must therefore scrutinize the remaining three requirements for collateral estoppel, specifically the first, second and third requirements, to determine what factual and legal issues relevant to the dischargeability claims have been decided in the State Court Judgment.

The second and third requirements for collateral estoppel are interrelated. The second requirement, the "actually litigated" element, applies, even in the context of a default judgment, where the record shows an express finding upon the allegation for which issue preclusion is sought. *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1124 (9th Cir. 2003), citing *Williams v. Williams (In re Williams' Estate)*, 36 Cal.

2d, 289, 297 (1950). However, the "express finding" requirement can be waived if the court in the prior proceeding necessarily decided the issue. *Cantrell*, 329 F.3d at 1124, citing *In re Harmon*, 250 F.3d at 1248. In such circumstances, an express finding is not required "if an issue was necessarily decided in a prior proceeding, it was actually litigated." *Id.*

Shepard contends that none of the State Court's factual findings were actually litigated because (1) he for some reason did not have notice of the dispositive proceedings in the second phase, the liability phase, of the Civil Action, (2) he could not afford an attorney to represent him in the liability phase of the Civil Action, and (3) he did not "substantially participate" in the Civil Action. Shepard essentially argues that the State Court Judgment was entered against him by default. However, Shepard does not contend that he was not properly served with the summons and complaint and that he was not aware of the ongoing Civil Action. Indeed he actually retained an attorney to represent him, at least through the accounting phase of the Civil Action. The Findings and Conclusions state that after the accounting, Shepard and his counsel appeared at a further pre-trial hearing on October 31, 2007, and stipulated to dismiss the remaining claims against Conklin.[2] Thereafter, Shepard elected not to participate in the Civil Action, albeit for economic reasons, and Conklin presented his evidence against Shepard virtually unopposed.

Absent a showing of that Shepard was tricked or fraudulently induced to not participate in the Civil Action, then his decision not to participate, or inability to participate, does not prevent the State Court from fully litigating the factual and legal issues before it. Shepard offers no evidence in this proceeding to suggest that each of the separate Findings and Conclusions was not supported by some evidence in the Civil Action. Even a default judgment, or a judgement entered against a defendant without due process, can be binding if the record shows that the defendant had actual notice of the judgment and an opportunity to seek timely relief from the judgment in the State Court. *In re Cantrell*, 329 F.3d at 1124, citing *In re Harmon*, 250 F.3d at 1247. The critical

---

[2] Findings and Conclusions No. 42.

8

question is not whether the defendant actually participated in the state court litigation, but whether he had a "full and fair" opportunity to litigate or seek relief from the state court. *Id.*

Here, there is no dispute that Shepard had actual notice of the pending Civil Action. He had a full and fair opportunity to litigate his defense of Conklin's cross-complaint and any claims he may have had against Conklin. This court is not being asked to enter a new judgment against Shepard, only to determine the dischargeability of the Judgment that has already been entered. If there are any grounds upon which Shepard may yet modify or seek relief from the State Court Judgment under nonbankruptcy law, then presumably he still has an opportunity to seek that relief from the State Court.

**B. Elements of Plaintiff's Claims for Relief.**

    **1. Section 523(a)(4): Fraud or Defalcation While Acting as a Fiduciary.**

Conklin contends that Shepard committed fraud or defalcation while acting as a fiduciary. If Conklin can make that showing, then his Judgment against Shepard based on that conduct will be nondischargeable under § 523(a)(4). To prevail, Conklin must show the existence of a fiduciary relationship and that the debt is attributable to wrongful conduct in connection with that relationship. "A debt is nondischargeable under 11 U.S.C. § 523(a)(4) where '1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the same time the debt was created.'" *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997).

An action under § 523(a)(4) requires an express or statutory trust relationship between the parties. For example, in *In re Niles*, 106 F.3d 1456, debtor Niles, a real estate agent, managed property owned by Otto. Otto filed an adversary action against Niles in her bankruptcy alleging Niles misappropriated rents collected from Otto's property. The court ruled that Niles did have a *fiduciary obligation* in connection with the funds she collected and that she was required to deposit those funds into Otto's property management account pursuant to an express or statutory trust under California law. As a result, Niles bore the burden of accounting for those funds with which she had

been entrusted.

Here, the State Court specifically found after a lengthy evidentiary hearing that (1) Shepard and Conklin were partners under California law, (2) as a partner, Shepard had a fiduciary duty to Conklin under California law, (3) Shepard breached his fiduciary duty, and (4) Conklin was damaged as set forth in the State Court Judgment. Those are the same issues that Conklin needs to prove to prevail on his § 523(a)(4) claim. Shepard offers no evidence to suggest that those issues were not necessarily and actually litigated in the Civil Action. Accordingly, collateral estoppel is appropriate to preclude relitigation of those issues in this adversary proceeding. Under California law partners are trustees over the assets of the partnership within the meaning of § 523(a)(4) and that a debt from the debtor to his partner based on the debtor having taken more than his rightful share is not dischargeable. *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir. 1986). The State Court Judgment is therefore nondischargeable under § 523(a)(4).

### 2. Section 523(a)(6): Willful and Malicious Injury.

Conklin also contends that Shepard's conduct was "willful and malicious" and he asks the court to determine that the State Court Judgement is nondischargeable under § 523(a)(6). A debt is excepted from discharge under § 523(a)(6) where it results from "willful and malicious injury by the debtor to another entity or to the property of another entity." Exceptions to discharge should be strictly construed in favor of the debtor. *County of El Dorado v. Crouch (In re Crouch)*, 199 B.R. 690, 691 (9th Cir. BAP 1996), citing *In re Klapp*, 706 F.2d 998, 999 (9th Cir. 1983).

In 1998, the United States Supreme Court decided *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), resolving a conflict among the circuits about the requirements for a debt to be nondischargeable under § 523(a)(6). A doctor treated his patient's foot injury with oral penicillin, though he knew that intravenous penicillin would have been more effective. He then left on a business trip. While he was absent, other physicians transferred the patient to an infectious disease specialist, which transfer the doctor cancelled upon his returned. He also discontinued all antibiotics. The patient's condition worsened and

eventually her leg was amputated below the knee. She received a malpractice judgment against the doctor, who then filed a chapter 7 case and sought a discharge of the judgment.

In the patient's § 523(a)(6) complaint, the bankruptcy court held the debt was nondischargeable; the district court affirmed; but the Eighth Circuit reversed in favor of the debtor. The Circuit held that the exemption from discharge of § 523(a)(6) "is confined to debts based on what the law has for generations called an intentional tort." *Id.* at 59 (citations and internal quotations omitted).

Upon appeal, the Supreme Court phrased the issue as follows: "Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury . . ., or only acts done with the actual intent to cause injury (as the Eighth Circuit ruled)?" *Id.* at 61. In affirming the Circuit's decision, the court noted that the word "willful" in § 523(a)(6) modifies the word "injury." In order to be nondischargeable, there must be a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. The court concluded, "[w]e hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 63.

After the Supreme Court ruling in *Kawaauhau*, lower courts and appellate courts have endeavored to apply it in particular circumstances. The Fifth Circuit Court of Appeals, in *Miller v. J.D. Abrams, Inc. (Matter of Miller)*, 156 F.3d 598 (5th Cir. 1998), held that an employer with a million-dollar judgment against a former employee, who had misappropriated proprietary information from the employer, could not prevail in its § 523(a)(6) complaint after the former employee filed a chapter 7 case. The court said that "willful" cannot mean negligence or recklessness. *Id.* at 603. Either objective substantial certainty of harm, or subjective motive to harm, meets the Supreme Court's definition of "willful . . . injury" in section 523(a)(6). *Id.* at 603.

In a Sixth Circuit Court of Appeals case, *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455 (6th Cir. 1999), a former client obtained a malpractice award for $300,000 against her attorney, Markowitz. Markowitz filed a chapter 7 bankruptcy

11

1  and the former client filed a complaint to determine the dischargeability of the award.
2  The Sixth Circuit held, "from the Court's language and analysis in *Geiger*, we now hold
3  that unless the actor desires to cause consequences of his act or believes that the
4  consequences are substantially certain to result from it . . . he has not committed a willful
5  and malicious injury as defined under section 523(a)(6)." *Id.* at 464 (citations and
6  internal quotations omitted).
7        The Ninth Circuit Court of Appeals addressed the issue in *Petralia v. Jercich (In
8  re Jercich)*, 238 F.3d 1202 (9th Cir. 2001). In that case, an employer deliberately chose
9  not to pay his employee and instead used the "payroll" money for personal investments.
10 A state court held that the employer's conduct was "willful and oppressive" under
11 California Civil Code § 3294. *Id.* at 1204. The bankruptcy court ruled that the
12 employee's claim was dischargeable under § 523(a)(6) and the Bankruptcy Appellate
13 Panel affirmed. However, the Ninth Circuit reversed, holding that, under § 523(a)(6), it
14 must be shown that the debtor inflicted the injury willfully and maliciously rather than
15 recklessly or negligently. *Id.* at 1207. "[U]nder *Geiger*, the willful injury requirement of
16 § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to
17 inflict the injury *or* that the debtor believed that the injury was substantially certain to
18 occur as a result of his conduct." *Id.* at 1208 (emphasis in original). The state court had
19 found that the employer knew he owed the wages to his employee and that injury was
20 substantially certain if the wages were not paid. The employer had the money and the
21 ability to pay the employee as required by California law, but he intentionally chose not to
22 pay the wages due. An act is malicious within the meaning of § 523(a)(6), where it is (1)
23 a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done
24 without just cause or excuse. *Id.* at 1209.
25       The ruling in *In re Jercich* should be read narrowly in light of the court's
26 subsequent decision in *Lockerby v. Sierra,* 535 F.3d 1038 (9th Cir. 2008), where it held
27 that, "an intentional breach of contract cannot give rise to non-dischargeability under §
28 523(a)(6) unless it is accompanied by conduct that constitutes a tort under state law." *Id.*

Case 08-01210    Filed 03/10/09    Doc 34

at 1040. In *Lockerby*, an attorney and his client settled a malpractice suit and the attorney decided to breach that agreement by not paying the former client as had been agreed. The bankruptcy court, affirmed by the district court, decided the debt was nondischargeable under § 523(a)(6) because "Sierra possessed the 'subjective intent of harming Lockerby.'" *Id.* The Ninth Circuit reversed that decision in favor of the debtor and held that the debt was not excepted from the debtor's discharge. Following *Kawaauhau*, the court held that "'[i]ntentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself . . . .'" *Id.* at 1041 (internal citations omitted). The court went on to explain that the Supreme Court, in *Kawaauhau*, "specifically rejected the notion that a 'knowing breach of contract' could trigger exception from discharge under § 523(a)(6)."

Here, the State Court specifically found, *inter alia*, that (1) Shepard misappropriated Partnership property for his own use in the new Corporation, (2) Shepard knew his actions were wrongful and concealed his actions from Conklin, (3) Shepard changed the locks on the Partnership premises and intentionally excluded Conklin from the Partnership business activities, and (4) that Shepard's actions were willful and malicious. Although the State Court did not specifically find in so many words that Shepard "intended to cause injury" to Conklin, this court can infer that intent based on the totality of the circumstances. *Washington Mutual Bank v. Dubovoy (In re Dubovoy)*, 377 B.R. 705, 710 (Bankr. M.D. Fla. 2006). Based on the State Court's finding that Shepard violated his fiduciary duty to Conklin with malice, and the award of punitive damages, this court is convinced that Shepard's conduct was willful and malicious and done with intent to injure Conklin.[3]

**Shepard's Defense.**

Notably, Shepard does not deny anywhere that he committed any of the acts set

---

[3]Under California Civil Code § 3294(a), punitive damages may only be awarded where it is proven by clear and convincing evidence that the defendant has been guilty of "oppression, fraud or malice." The court can infer from an award of punitive damages that one or all of the elements of § 3294(a) have been proven. See *In re Cantrell*, 329 F.3d at 1125.

13

forth in the Findings and Conclusions.  Neither does Shepard contend that there is, nor was, any triable issue of material fact as to any of his conduct following dissolution of the Partnership as set forth in the Findings and Conclusions.  In response to the Motion, Shepard argues that Conklin also misused Partnership credit cards, misappropriated Partnership assets for his personal use, withdrew large sums of cash ($109,200) from the Partnership's account and removed valuable tools and computer software.  Based thereon, Shepard contends that Conklin acted with unclean hands.  Shepard argues that there are triable issues of material fact whether Shepard's actions were justified and excused.  However, Shepard's allegations of Conklin's misconduct are mitigating defensive issues that could have and should have been raised and prosecuted in the second phase of the Civil Action.  Shepard cannot raise for the first time here issues which should have been raised and litigated in defense of the liability issues in the prior Civil Action.  Now that the State Court has fully adjudicated that dispute, those mitigating defenses cannot now be raised to nullify the Findings and Conclusions.  This court is bound by federal law to accept the State Court's Findings and Conclusions as a final adjudication of Shepard's liability to Conklin.

**Conclusion.**

Based on the foregoing, the court finds and concludes that Conklin already holds a State Court Judgment for compensatory and punitive damages against Shepard.  That Judgment is final and cannot be appealed to, or relitigated in this bankruptcy court.  However, this court can determine whether the State Court Judgement is nondischargeable under §§ 523(a)(4) and (a)(6).  It appears that the factual issues necessary to establish Conklin's nondischargeability claims have already been fully litigated in the State Court and are applicable here by the doctrine of collateral estoppel.  Shepard is barred from asserting new defensive issues in this adversary proceeding.

/ / /

/ / /

/ / /

There are no remaining issues of material fact which can be, or need to be, litigated in this court and Conklin is entitled to judgment in this adversary proceeding as a matter of law. Accordingly, Plaintiff's motion for summary judgment will be granted. Judgment will be entered in favor of Conklin.

Dated: March 10, 2009

W. Richard Lee
United States Bankruptcy Judge